IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CT-3056-D

FREDERICK HINES,    )
    )
    Plaintiff,    )
    )
    v.    )    **ORDER**
    )
GEO GROUP INC.,    )
    )
    Defendants.    )

Frederick Hines ("Hines" or "plaintiff"), an inmate at Rivers Correctional Institution ("Rivers"), filed this action in the United States District Court for the District of Columbia [D.E. 1]. The action was transferred to this court pursuant to 28 U.S.C. § 1404(a). Hines v. GEO Group Inc., No. 07-1664 (JDB), at *1 (D.D.C. Apr. 15, 2008) (unpublished). On December 23, 2008, the court granted the Bureau of Prisons' ("BOP") and BOP Director Harley Lappin's ("Lappin") motion to dismiss plaintiff's claims under Bivens, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, and state law negligence. Hines v. GEO Group Inc., No. 5:08-CT-3056-D, at *2, *10 (E.D.N.C. Dec. 23, 2008) (unpublished). As for defendant GEO Group, Inc. ("GEO"), the court dismissed Hines' claims under Bivens and the ADA. Id. As for the balance of his amended complaint, the court allowed Hines to proceed on his claim under the Rehabilitation Act based on GEO's alleged denial to plaintiff of the benefit of the programs or activities offered at Rivers due solely to his alleged disability or that he has been discriminated against due solely to his disability. Id. The court also allowed Hines to proceed on his state-law negligence claim. Id.

On January 5, 2009, GEO filed a motion for judgment on the pleadings and argued that plaintiff's remaining claims fail as a matter of law [D.E. 58]. On January 15, 2009, plaintiff filed his response in opposition to the motion [D.E. 62]. On February 13, 2009, defendant replied [D.E. 68]. As explained below, defendant's motion for judgment on the pleadings [D.E. 58] is granted. Plaintiff's motion for issuance of a subpoena [D.E. 91] is denied as moot.

I.

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is designed to dispose of cases when the material facts are not in dispute; therefore, the court can judge the case on its merits by considering the pleadings along with any attachments to and materials referenced in the pleadings, which are incorporated into the pleadings by reference. See Fed. R. Civ. P. 10(c).

On October 29, 2008, GEO filed its answer to plaintiff's first amended complaint [D.E. 47], and the pleadings are closed. See Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405 (4th Cir. 2002). Further, "[a]s a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001) (quotation omitted). Thus, the court considers the allegations in the amended complaint [D.E. 39] in analyzing GEO's motion for judgment on the pleadings.

The same standard applies to a motion for judgment on the pleadings under Rule 12(c) as for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Burbach Broad. Co., 278 F.3d at 405–06. In analyzing a motion for a judgment on the pleadings, a court must determine whether the complaint is legally and factually sufficient. See Ashcroft v. Iqbal, 129 S. Ct.

2

1937, 1949–52 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563, 570 (2007); <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008); <u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); <u>accord</u> <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) (per curiam). In evaluating a motion for judgment on the pleadings, the court accepts the complaint's factual allegations as true, but need not accept a complaint's legal conclusions drawn from the facts. <u>Ashcroft</u>, 129 S. Ct. at 1949–50; <u>Giarratano</u>, 521 F.3d at 302. Similarly, a court need not accept as true unwarranted inferences, unreasonable conclusions, or arguments. <u>Giarrantano</u>, 521 F.3d at 302.

Pursuant to a contract with the BOP, GEO is responsible for housing federal inmates at Rivers. <u>See</u> Am. Compl ¶¶ 4, 5, 7. GEO owns and operates Rivers, which is located in Winton, North Carolina. <u>See</u> Compl. ¶¶ 1, 5. Since 2004, Hines has been incarcerated at Rivers. <u>See</u> Am. Compl. ¶ 9. Hines allegedly suffered a severe stroke in 2002, which paralyzed the left side of his body. <u>Id.</u> ¶ 8. According to Hines, his medical history includes hypertension, seizure disorder, depressive disorder, hypercholesterolemia, gastroesophageal reflux disease, lumbar strain, scoliosis, and chronic obstructive pulmonary disease. <u>See id.</u> ¶ 9. Hines also claims to have been diagnosed with lung cancer. <u>Id.</u> As a result of GEO's actions, Hines alleges that he has been "permanently harmed," suffered "numerous and otherwise avoidable acute medical crises," and experienced "chronic and debilitating pain and suffering and . . . continued needless serious physical and mental injury." Compl. ¶ 4.

Hines seeks declaratory relief and compensatory damages from GEO under the Rehabilitation Act. <u>See</u> Am. Compl. ¶ 22. Section 504(a) of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency . . . .

3

29 U.S.C. § 794(a). Section 505(a) of the Rehabilitation Act describes the remedies available for a violation of section 504(a). It states: "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under [section 504]." 29 U.S.C. § 794a(2). Hines asserts that GEO receives federal financial assistance and that he is a "qualified individual with a disability under [s]ection 504" who has been discriminated against "solely by reason of his disability." Am. Compl. ¶¶ 20, 31. In response, GEO contends that it does not receive federal financial assistance within the meaning of the Rehabilitation Act and, therefore, cannot be held liable for violating the Rehabilitation Act. Def.'s Mem. 2–6.

"Federal financial assistance" is not defined in the Rehabilitation Act. However, "[t]he application of the Rehabilitation Act . . . is illuminated by its implementing regulations." McCullough v. Branch Banking & Trust Co., 844 F. Supp. 258, 259 n.4 (E.D.N.C. 1993) (quotation omitted), aff'd, 35 F.3d 127 (4th Cir. 1994). The BOP is an agency within the United States Department of Justice. In connection with the Rehabilitation Act, the Department of Justice promulgated the following definition of federal financial assistance: "Federal financial assistance means any grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty) . . . ." 28 C.F.R. § 41.3(e).[1] Moreover,

> [a]n executive agency shall use a procurement contract as the legal instrument reflecting a relationship between the United States Government and a State, a local government, or other recipient when — (1) the principal purpose of the instrument is to acquire . . . property or services for the direct benefit or use of the United States Government.

31 U.S.C. § 6303. Payments that a federal government contractor receives for property or services

---

[1]Other federal agencies use a materially indistinguishable definition. See, e.g., 45 C.F.R. § 84.3(h) (Department of Health and Human Services).

rendered to the United States pursuant to a procurement contract are not federal financial assistance under the Rehabilitation Act. See, e.g., Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420–21 (4th Cir. 2005); DeVargas v. Mason & Hanger-Silas Mason Co., 911 F.2d 1377, 1382–83 (10th Cir. 1990).

Hines acknowledges that GEO contracted with the BOP "to house [p]laintiff along with similarly situated D.C. Code offenders." Am. Compl. ¶ 7. In return, BOP pays GEO. Id. ¶ 23. Payments received pursuant to a federal government contract to house prisoners do not constitute federal financial assistance under the Rehabilitation Act. See Logan v. United States, No. 96-55042, 1996 WL 717087, at *2 (9th Cir. Dec. 2, 1996) (per curiam) (unpublished); Nolley v. County of Erie, 776 F. Supp. 715, 743 (W.D.N.Y. 1991) (denying Rehabilitation Act claim against county because county did not receive federal financial assistance simply by virtue of payment pursuant to a federal government contract); see also Venkatraman, 417 F.3d at 421; DeVargas, 911 F.2d 1382–83. For example, in Logan, the BOP contracted with a private-detention facility to provide "care, custody, control, accountability and treatment of federal prisoners." Logan, 1996 WL 717087, at *1 (quotation omitted). Logan, a paraplegic, alleged that the facility was unable to meet his needs and sought relief under the Rehabilitation Act. Id. The Ninth Circuit denied plaintiff's Rehabilitation Act claim against the United States noting that "the Rehabilitation Act covers only the recipients of federal financial assistance and not the recipients of compensatory payments." Id. at *2; see 29 U.S.C. 794(b); Jacobson v. Delta Airlines, Inc., 742 F.2d 1202, 1210 (9th Cir. 1983). "Because [the plaintiff] did not allege that [the facility] operate[d] under federal financial assistance and the record shows the government did not subsidize [the facility's] operation," the Rehabilitation Act claim against the United States failed. Logan, 1996 WL 717087, at *2. Here, the pleadings show, as a matter of law, that GEO does not receive federal financial assistance within the meaning of the

5

Rehabilitation Act. See First Am. Compl. ¶¶ 7, 23. Thus, defendant's motion for judgment on the pleadings is granted as to plaintiff's Rehabilitation Act claim.

Hines also seeks to recover damages from GEO for negligence under North Carolina law. See Am. Compl. ¶¶ 34–36. Defendant responds that Hines is alleging a medical malpractice claim under North Carolina law, which requires certification pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure. See Def.'s Mem. 7. Because Hines failed to include a Rule 9(j) certification, GEO asks the court to dismiss plaintiff's negligence claim.

North Carolina state law determines the substantive elements of plaintiff's negligence claim. See, e.g., Fitzgerald v. Manning, 679 F.2d 341, 346 (4th Cir. 1982); Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676 (W.D.N.C. 2004). Rule 9(j) states in relevant part:

> Any complaint alleging medical malpractice by a health care provider as defined in [N.C. Gen Stat. §] 90-21.11 in failing to comply with the applicable standard of care under [N.C. Gen. Stat. §] 90-21.12 shall be dismissed unless:
>
> (1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
>
> (2) The pleading specifically asserts that the medical care has been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care and the motion is filed with the complaint; or
>
> (3) The pleading alleges facts establishing negligence under the existing common-law doctrine or res ipsa loquitur.

N.C. R. Civ. P. 9(j).

Rule 9(j) references N.C. Gen. Stat § 90-21.11 and § 90-21.12. See N.C. R. Civ. P. 9(j).

6

N.C. Gen. Stat. § 90-21.11 defines the term "health care provider" under North Carolina law.[2] N.C. Gen. Stat. § 90-21.12 defines the "applicable standard of care."[3]

The North Carolina General Assembly enacted Rule 9(j) in 1995 "in part, to protect defendants from having to defend frivolous medical malpractice actions by ensuring that before a complaint for medical malpractice is filed, a competent medical professional has reviewed the

---

[2]N.C. Gen. Stat. § 90-21.11 states:

As used in this Article, the term "health care provider" means without limitation any person who pursuant to the provisions of Chapter 90 of the General Statutes is licensed, or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with any of the following: medicine, surgery, dentistry, pharmacy, optometry, midwifery, osteopathy, podiatry, chiropractic, radiology, nursing, physiotherapy, pathology, anesthesiology, anesthesia, laboratory analysis, rendering assistance to a physician, dental hygiene, psychiatry, psychology; or a hospital or a nursing home; or any other person who is legally responsible for the negligence of such person, hospital or nursing home; or any other person acting at the direction or under the supervision of any of the foregoing persons, hospital, or nursing home.

As used in this Article, the term "medical malpractice action" means a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider.

N.C. Gen. Stat. § 90-21.11 (emphasis added).

[3]N.C. Gen. Stat. § 90-21.12 states:

In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

N.C. Gen. Stat. § 90-21.12.

7

conduct of the defendants and concluded that the conduct did not meet the applicable standard of care." Estate of Waters v. Jarman, 144 N.C. App. 98, 100, 547 S.E.2d 142, 144 (2001) (quotation omitted). Hines alleges medical malpractice, but did not include a proper Rule 9(j) certification. Thus, unless Rule 9(j)'s res ipsa loquitur exception applies, the court must dismiss the claim. See, e.g., Moore v. Pitt County Mem'l Hosp., 139 F. Supp. 2d 712, 713 (E.D.N.C. 2001); Keith v. N. Hosp. Dist. of Surry County, 129 N.C. App. 402, 404–05, 499 S.E.2d 200, 202 (1998).

> As for the res ipsa loquitur exception to Rule 9(j)'s certification requirement, res ipsa loquitur
>
> is a doctrine addressed to those situations where the facts or circumstances accompanying an injury by their very nature raise a presumption of negligence on the part of defendant. It is applicable when no proof of the cause of any injury is available, the instrument involved in the injury is in the exclusive control of defendant, and the injury is of a type that would not normally occur in the absence of negligence.

Howie v. Walsh, 168 N.C. App. 694, 698, 609 S.E.2d 249, 251 (2005) (quotation omitted). "Application of res ipsa in medical malpractice actions has received special attention, resulting in what [the North Carolina] Supreme Court has characterized as a 'somewhat restrictive' application of the doctrine." Schaffner v. Cumberland County Hosp. Sys., 77 N.C. App. 689, 692, 336 S.E.2d 116, 118 (1985). Plaintiff's claims concerning his medical care do not fall within the res ipsa loquitur exception. See N.C. R. Civ. P. 9(j)(1); Hayes v. Peters, 184 N.C. App. 285, 287–88, 645 S.E.2d 846, 848 (2007). Accordingly, the court dismisses without prejudice plaintiff's negligence claims against GEO.

In opposition to the conclusion that Rule 9(j) mandates dismissal, plaintiff argues that he seeks to recover for GEO's "negligence," but not medical malpractice. See Pl.'s Resp. 3. Plaintiff's label, however, does not determine whether a Rule 9(j) certification is required. See, e.g., Estate of Waters, 144 N.C. App. at 103, 547 S.E.2d at 145. Rather, the court must examine whether a plaintiff

8

seeks relief from a "health care provider" due to any injury arising out of the furnishing of or failure to furnish professional services in the performance of medical, dental, or other health care. See id. at 103, 547 S.E.2d. at 145.

GEO is a "health care provider" as defined in N.C. Gen. Stat. § 90-20.11 because Hines seeks to hold GEO liable for the alleged negligence of GEO's medical staff. See N.C. Gen. Stat. § 90-20.11 (defining "health care provider"); cf. Am. Compl. ¶¶ 11–16. Moreover, the amended complaint details the alleged injuries arising from the alleged patient care decisions of GEO's medical staff. See, e.g., Am. Compl. ¶¶ 11–16. As such, plaintiff's claim "sounds in malpractice, not ordinary negligence." Frazier, 308 F. Supp. at 678. Accordingly, Rule 9(j) certification is required.

Alternatively, Hines contends that Rule 9(j) has been declared unconstitutional and cites Anderson v. Assimos, 146 N.C. App. 339, 553 S.E.2d 63 (2001). However, the North Carolina Supreme Court vacated Anderson "to the extent it concluded that Rule 9(j) violates Article I, Section 18 of the North Carolina Constitution and the Equal Protection Clause of the North Carolina and United States Constitutions." Anderson v. Assimos, 356 N.C. 415, 417, 572 S.E.2d 101, 103 (2002) (per curiam).

Finally, Hines argues that the Rule 9(j) certification bars an inmate's access to the court. See Pl.'s Resp. 2. The North Carolina legislature, however, did not exempt inmates from Rule 9(j), and this court declines plaintiff's invitation to create a judicial exception to the certification requirement. See, e.g., Muhammad v. United States, No. 1:04-CV-252, 2006 WL 2473424, at *2 (N.D. W. Va. Aug. 25, 2006) (unpublished); Senty-Haugen v. Goodno, No. Civ. 04-1077 ADMJJG, 2005 WL 2917464, at *9 (D. Minn. Nov. 4, 2005) (unpublished), aff'd, 462 F.3d 876 (8th Cir. 2006).

9

## II.

For the reasons discussed, the court GRANTS defendant GEO's motion for judgment on the pleadings [D.E. 58]. The court DENIES plaintiff's motion for issuance of a subpoena [D.E. 91] as moot. The action is DISMISSED without prejudice.

SO ORDERED. This _30_ day of September 2009.

JAMES C. DEVER III
United States District Judge